December 27th, 1904.

————o————

## No. 3545.

(Court of Appeal, Parish of Orleans.)

### MRS. JOSEPH CLERES vs. JULES ALDIGE.

Appeal from Civil District Court, Division "C."

Fenner, Henderson and Fenner, for Plaintiff and Appellant.

H. T. Gurley and Felix J. Puig, for Defendant and Appellee.

1. Where a third person acquires in good faith and for value a negotiable instrument *after* it has matured according to its original tenor, but *before* the maturity fixed by an undated indorsement on the note extending its payment to a later period, he takes same free of all the equities with which it was encumbered in the hands of

the party from whom he received it.

2. Where the indorsement in such case bears no date, it will be presumed in favor of such innocent third holder, that it was made before the maturity.

MOORE, J.   The question involved in this case is whether a third person, who acquires in good faith for value a negotiable note *after* it has matured, according to its original tenor, but *before* the maturity fixed by an indorsement on the note extending its payment to a later period, takes same free of all the equities with which it was encumbered in the hands of the party from whom he received it.

The facts are that the plaintiff, immediately after its execution, acquired from the maker a certain promissory note dated September 15th, 1900, payable one year after said date to the maker's own order for the sum of $2000.00 with 8 per cent. per annum interest thereon from maturity, and which note was secured by mortgage as per act of mortgage passed before Emile J. Barnett, Notary Public, on said date.   Subsequent to the maturity of the note about the latter part of March, 1902, plaintiff placed same in the hands of said Barnett, "as her agent," to collect either the entire amount due on the note or merely the interest thereon as in his judgment the agent deemed best.   Barnett collected from the maker the interest due on the note up to the 15th of September, 1902, and made and signed an endorsement to that effect on the back of the note thus extending its date of payment to the period stated, September 15th, 1902.

This indorsement, however, is not dated.

On the 10th of July, 1902, two months prior to the extended period of payment, Barnett transferred the note to the defendant who acquired the same in good faith and for value and in the belief that Barnett was the owner thereof.

Subsequently Barnett absconded without accounting to plaintiff for either the interest collected from the maker or for the money

collected from the defendant as the purchase price of the note, hence plaintiff's action to be recognized as the owner and entitled to the possession of the note now held by the defendant. .

The argument of the learned counsel for the plaintiff is, that after an instrument originally negotiable survives its maturity unpaid, it ceases, *ipso facto,* to possess the extraordinary qualities and characteristics of a negotiable instrument, and becomes subject again to the ordinary rules governing property in general, one of the most important or which is that a man can transfer no better title to a piece of property than he has, and that, as a general proposition, an endorsement extending the time of payment, made after the maturity of a note originally negotiable, will no more change its acquired character as a non-negotiable instrument than would such an endorsement change the character of an instrument originally non-negotiable.

It is elementary that the character of an instrument may be changed by endorsement; its purport is not only to be collected from "the four corners" but from "the eight corners;" a memorandum on the back affecting its operation being regarded the same as if written on its face.

1 Daniel on Neg. Ins., 151.

Nor may it be doubted that after a negotiable note has matured according to its original tenor it may be reinvested with the attribute of negotiability by any endorsement which may be placed upon it by the maker or other person. Bank vs. Cannon 52 A. 1485.

Whether, however, such endorsement gives the note the character of negotiability in its proper commercial sense, *id est,* that its assignee takes it subject to no equities between prior parties, is another matter, and depends upon the fact whether the third holder knew, or was charged with notice, that such endorsement was made after the maturity of the note according to its original tenor. If he had such knowledge or was charged with such notice he acquired nothing but the actual right and title of the transferrer.

79

If, on the other hand, he had no such knowledge or was not charged with such notice he takes the instrument free from all equities.

The assignee is charged with notice of eveything confined within "the eight corners" of the instrument; hence it is that if within these limits he may learn that the indorsement was made after the maturity of the instrument according to its original tenor, as for instance, by the date of the indorsement, he is not then an innocent holder and may recover only to the entent·that his transferrer could recover. ·If, however, *the endorsement bears no date,* and he is not otherwise advised from "the eight corners" of the date of the endorsement, and has no knowledge of that fact outside of the instrument itself, then the assignee is an innocent holder and takes the instrument free from all equities with which it was encumbered in the hands of the party from whom he received it; for the law then presumes that the indorsement which bears no date was made before the original maturity. Speaking of indosements generally, Mr. Daniels, in his work on Negotiable Instruments, 728, says:

"If the indorsement of a bill or note be undated it will be presumed when the paper is in the hands of a third party, to have been made at the time of execution, or at·least, before maturity and dishonor. It is difficult to see how a more difficult presumption than that the indorsement was before maturity can be sustained, and this seems to be all that is necessary to the protection of commercial paper."

To this same effect and directly on the question involved in this case is the decision in Bank vs. Cannon, 52 A., 1484.

Reviewing Marcal vs. Milliet, 18 A., 225, and differentiating that case from the one under consideration by the Court, Mr. Justice Monroe, speaking for the Court, said: "It was therefore evident from the instrument itself, (in the Marcal case) that it was extended after maturity, and any one taking it was affected with knowledge of that fact. Concerning, *arguendo,* then, that where

80

knowledge that a note has been extended after maturity is brought home to the third holder, he may be met by such equitable defenses as might have been set up against the original holder, it by no means follows that the same rule should be applied in a case where it appears that such third holder did not know and had no means of knowing, whether the payment of the instrument was extended after maturity or before."

In the case then under consideration the indorsement bore no date and Mr. Justice Monroe added: "As the matters stood, however, the plaintiff was justified in assuming that the extension was indorsed on the note before its maturity," and the Court held the holder to be an innocent holder and protected against all equities existing between prior parties.

As shown in Bank vs. Cannon, 52 A. 1484, neither the case of Marcal vs. Milliet, 18 A. 255, nor Bank vs. Bouny, 42 A. 439; nor Sugony vs. Bank, 42 A. 627, (all of which cases are relied on by plaintiff herein), are in conflict with the views announced in the Cannon case and which views are applicable to and must control decision in the instant case.

On the authority of the Cannon case our esteemed brother of the lower court rejected plaintiff's demand and on the same authority so do we. The judgment appealed from is affirmed.

December 27th, 1904.

Rehearing refused January 23, 1905.